UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
MICHAEL PISANO,

                              Plaintiff,              08 Civ. 1045 (SCR)

          -against-

ALEX MANCONE, individually and in
his capacity as Chief of Police of the
Village of Brewster, New York, JOHN
DEGNAN, individually, WILLIAM
BANKS, individually, and the
VILLAGE OF BREWSTER, New York,

                              Defendants.
-------------------------------------------------x


**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO THE PRE-ANSWER MOTION
OF DEFENDANTS DEGNAN, BANKS
AND VILLAGE OF BREWSTER
TO DISMISS THE COMPLAINT**

## TABLE OF CONTENTS

**Page**

Table of Authorities ……………..…………………………………………ii

The Allegations of the Complaint………………………..……………... …………2

The Legal Standard to be Applied on a Motion to Dismiss……………………………6

POINT I
    THE COMPLAINT SUFFICIENTLY PLEADS A CLAIM
    AGAINST THE VILLAGE………………………..………………………...……….…7

POINT II
    PLAINTIFF'S FIRST AMENDMENT CLAIM IS NOT BARRED
    BY GARCETTI V. CEBALLOS…………………………………………...…10

POINT III
    NEITHER DEGNAN NOR BANKS IS ENTITLED TO QUALIFIED
    IMMUNITY……………………………………………...………………15

Conclusion ……………………………………………………………17

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page**

Brescia v. Sia, 2006 WL 2734231 (S.D.N.Y.)........................................................13

Carbajal v. County of Nassau, 271 F.Supp2d 415 (E.D.N.Y. 2003)........................10

Carusso v. Massapequa Union Free School District, 478 F.Supp2d 377
     (E.D.N.Y. 2007).......................................................................................13

Christie v. Iopa, 76 F.3d 1231 (9th Cir. 1999).......................................................8

Cooper v. Parsky, 140 F.3d 433 (2nd Cir. 1998)...............................................6, 10

Demoret v. Zegarelli, 451 F.3d 140 (2nd Cir. 2006)............................................16

Drollet v. DeMarco, 2007 WL 1851102 (D.Conn)...................................13, 15, 16

Field Day, LLC v. County of Suffolk, 2005 WL 2445777794 (E.D.N.Y. 2005)............8

Freedman v. Freedman, 116 F.Supp.2d 379 (E.D.N.Y. 2000)................................6

Garcetti v. Ceballos, 126 S.Ct. 1951 (2006)...................................5, 10, 11, 12, 13

Guglielmo v. Kopald, 2007 WL 1834740 (S.D.N.Y.).........................................13

Iannillo v. County of Orange, 187 F.Supp.2d 170 (S.D.N.Y. 2002).......................10

Jackson v. Jimino, 2007 WL 189311 (N.D.N.Y.)...........................................10, 11

Kempkes v. Downey, 2008 WL 852765 (S.D.N.Y.)............................................9

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
     507 U.S. 163 (1993).................................................................................10

Lewis v. Cowen, 165 F.3d 154 (2nd Cir. 2006)..................................................13

Luna v. Pico, 356 F.3d 481 (2nd Cir. 2004).......................................................15

McMahon v. New York City Board of Education, 2006 WL 3680624 (E.D.N.Y.)........10

Monell v. Dept. of Social Services, 436 U.S. 658 (1978).......................................7

Morey v. Somers Central School District, 2207 WL 867203 (S.D.N.Y.)..................11

Morris v. Lindau, 196 F.3d 102 (2nd Cir. 1999)...................................................13

Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123 (2nd Cir. 2001)............6

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)..........................................7

Piesco v. New York City Department of Personnel, 933 F.2d 1149
    (2d Cir. 1991), *cert. denied* 112 S.Ct. 331(1991)...........................................15

Reuland v. Hynes, 2006 WL 2391163 (2nd Cir. 2006).......................................13

Rucci v. Thoubboron, 65 F.Supp.2d 311 (S.D.N.Y. 1999)..............................8, 10

Schlesinger v. New York City Transit Authority, 2001 WL 62868 (S.D.N.Y. 2001).......6

Shelton Police Union, Inc. v. Voccola, 125 F.Supp2d 604 (D.Conn 2001)...............13

Sheppard v. Beerman, 18 F.3d 147 (2nd Cir. 1994), *cert. denied*, 115 S.Ct. 73 (1994)......6

Skehan v. Village of Mamaroneck, 2006 WL 2734218 (2nd Cir. 2006)............14, 15, 16

Sorlucco v. New York City Police Dep't., 971 F.2d 864 (2nd Cir. 1992)....................7

Spencer v The City of New York, 2007 WL 1573871 (S.D.N.Y.)............................13

## **Statutes**

42 U.S.C. §1983 ................................................................................................7

Rule 12(b) of the FRCP......................................................................................6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------x
MICHAEL PISANO,

                                     Plaintiff,                    08 Civ. 1045 (SCR)

               -against-

ALEX MANCONE, individually and in
his capacity as Chief of Police of the
Village of Brewster, New York, JOHN
DEGNAN, individually, WILLIAM
BANKS, individually, and the
VILLAGE OF BREWSTER, New York,

                                  Defendants.
----------------------------------------------------x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE PRE-ANSWER MOTION OF DEFENDANTS DEGNAN, BANKS AND VILLAGE OF BREWSTER TO DISMISS THE COMPLAINT**

       This Memorandum of Law is submitted on behalf of the Plaintiff, Michael Pisano,

in opposition to the Pre-Answer Motion to Dismiss of Defendants, Village of Brewster,

Village Mayor and Police Commissioner John Degnan and Village Trustee and Police

Commissioner William Banks.[1]

---

[1] Defendant Police Chief Alex Mancone is represented by separate counsel and has not moved pursuant to Rule 12(b).

## THE ALLEGATIONS OF THE COMPLAINT

Plaintiff MICHAEL PISANO is a citizen of the United States, a domiciliary of the State of New York, a resident of the Northern Counties, and a retired long-term member of the New York City Police Department. Commencing on December 6, 2006, he was hired as a "Patrol Sergeant" in the newly established Village of Brewster, New York, Police Department. Complaint, para. 3.

Defendant ALEX MANCONE (hereinafter "Mancone"), who is sued in his individual and official capacities, at all times relevant to this complaint was the Chief of Police of the Defendant Village. Complaint, para. 4

Defendant VILLAGE OF BREWSTER, New York (hereinafter "Village") is a municipal corporate subdivision of the State of New York duly existing by reason of and pursuant to the laws of said State. Defendant JOHN DEGNAN (hereinafter "Degnan") is the Mayor and a Police Commissioner of the Village and Defendant WILLIAM BANKS (hereinafter "Banks") is an elected Trustee and a Police Commissioner of the Village. Both Degnan and Banks are sued only in their individual and personal capacities. Complaint, para. 5

As set forth in Paragraph 6 of the Complaint, on March 15, 2007, Plaintiff met with Degnan and Banks at which time he in good faith non-disruptively expressed to them his fact-based concerns that:

> a. As a matter of law Mancone was not lawfully appointed Chief of Police because he had never held a full-time police officer job position, he had never taken a competitive civil service examination for the position of Chief of Police, and he had not been appointed as Chief of Police from a certified civil service eligible list,

b.  By reason of his lack of a professional police background, from time to time Mancone issued patently unlawful orders to subordinate officers, who in turn refused to obey them by reason of their illegality,

c. Mancone purposefully circumvented the twenty hour weekly limit that part-time Police Officers were permitted to work under New York State law by ordering subordinate officers to falsify time records as a result of which: i) officers on unpaid vacation leave were falsely recorded as having reported to work when they did not; ii) officers directed by Mancone to "cover" for the vacationing officers were ordered to work a standard twenty hour work week as well as an unrecorded additional twenty hours; iii) which unrecorded hours were used to pay the vacationing officers who were unlawfully receiving their regular paychecks despite their absence on unpaid vacation leave,

d. Police Officer Wayne Peiffer (who works for a private sector supplier that provides equipment and materiel to Mancone in connection with his privately run HVAC business) had attended but within a few days dropped out of the New York State Police Academy as a result of which he was unqualified and untrained to properly perform law enforcement functions - - but was given a gun, badge and identification card by Mancone and permitted to act as a trained Police Officer in public thereby putting the public health and safety at risk, and

e. The Police Department, under the leadership of Mancone, Degnan and *inter alia* Banks had no departmental rules and/or policies a circumstance that both impaired departmental operations and the effective delivery of law enforcement and health related services to the community.

Complaint, para. 6.

According to the Complaint, Degnan and Banks then disclosed to Mancone Plaintiff's concerns and each of these Defendants agreed, with a view towards covering up rather than taking remedial action regarding the issues raised by Plaintiff, to punitively terminate his employment in order to silence him.  Complaint, para. 7.

In furtherance of Defendants' plan on April 17, 2007, Mancone issued to Plaintiff a letter of termination that stated in material respect:

"By authority of the Village Board of Trustees of the Village of Brewster. . .under color of my authority as Chief of Police . . .your position as probationary police officer is hereby terminated, effective immediately."

3

Complaint, para. 8,

   As a result of that termination Plaintiff applied for unemployment insurance which application was opposed by Defendants orally on the ground that Plaintiff had, in March of 2007, reported "negative information to the Mayor about the Police Department" and that that report resulted in his being terminated. Complaint, para. 9,

   Out of concern that the Department of Labor might disclose to Plaintiff the substance of Defendants' factual, albeit false predicate for opposing the unemployment insurance application, Defendants re-hired Plaintiff effective June 3, 2007, as a "Police Officer". Complaint, para. 10.

   Five days later the New York State Department of Labor, as memorialized in that Department's June 8, 2007, "Notice of Determination" disclosed to Plaintiff that his application was denied since:

> "You were discharged from employment at Brewster Police Department due to insubordination. It has been confirmed that you have presented negative information to the Mayor about the Police Department and you did not properly use the written chain of command. As a result of this you were dismissed for insubordination by the Cheif [*sic.*] of Police".

Complaint, para. 11,

   On July 8, 2007, Plaintiff was promoted to the rank of "Detective" by the Defendants as a result of which his salary increased. Complaint, para. 12,

   For the same reasons set forth in paragraph "7" of the Complaint four days later and by correspondence dated July 12, 2007, Mancone advised Plaintiff that he was again being terminated on the false pretext that:

> "The Village of Brewster Police Department is exceeding current budgetary constraints and forcing us to take action to prevent overruns from occurring.

It is therefore necessary to terminate your employment immediately, effective July 12, 2007".

Complaint, para. 13,

Thereafter and notwithstanding Defendants' claim of budgetary constraints, Defendants hired additional sworn members in the Police Department. Complaint, para. 14.

The Complaint further alleges that as a result of the Defendants' retaliatory conduct Plaintiff has been caused to suffer: repeated retaliation for his exercise of his First Amendment rights; a prospective chilling of his exercise of those rights; pecuniary losses; public embarrassment; public humiliation; emotional upset; anxiety; irreparable impairment of his previously unblemished career in law enforcement; and he has otherwise been rendered sick and sore. Complaint, para. 15.

The one and only claim alleged in the Complaint is a claim of violation of Plaintiff's First Amendment rights.

Defendants Village of Brewster (the "Village"), Degnan and Banks now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for dismissal of that claim. The stated bases for the Motion are that the Complaint fails to state a cause of action against the Village because, according to the Village, the Complaint fails to plead a Monell claim, the Complaint fails to sufficiently plead a First Amendment claim because, according to the Defendants, by virtue of Garcetti v. Cerballos, 547 U.S. 410 (2006) the speech alleged in the Complaint is not protected by the First Amendment and because, Defendants erroneously argue, the Complaint does not allege that the speech

5

## Table of Contents

**Page**

Table of Authorities ……………...……………………………………………..…ii

The Allegations of the Complaint……………………………..……………..…... …………..2

The Legal Standard to be Applied on a Motion to Dismiss…………………………….6

POINT I
     THE COMPLAINT SUFFICIENTLY PLEADS A CLAIM
     AGAINST THE VILLAGE……………………..………………….....…………..….7

POINT II
     PLAINTIFF'S FIRST AMENDMENT CLAIM IS NOT BARRED
     BY GARCETTI V. CEBALLOS………………………………………...…10

POINT III
     NEITHER DEGNAN NOR BANKS IS ENTITLED TO QUALIFIED
     IMMUNITY……………………………………………..……………………15

Conclusion ……………………………………………………………17

i

# TABLE AUTHORITES

**Cases**                                                                                              **Page**

Brescia v. Sia, 2006 WL 2734231 (S.D.N.Y.)..................................................13

Carbajal v. County of Nassau, 271 F.Supp2d 415 (E.D.N.Y. 2003)........................10

Carusso v. Massapequa Union Free School District, 478 F.Supp2d 377
        (E.D.N.Y. 2007)...............................................................................13

Christie v. Iopa, 76 F.3d 1231 (9th Cir. 1999)...............................................8

Cooper v. Parsky, 140 F.3d 433 (2nd Cir. 1998)..........................................6, 10

Demoret v. Zegarelli, 451 F.3d 140 (2nd Cir. 2006)..........................................16

Drollet v. DeMarco, 2007 WL 1851102 (D.Conn)....................................13, 15, 16

Field Day, LLC v. County of Suffolk, 2005 WL 2445777794 (E.D.N.Y. 2005)............8

Freedman v. Freedman, 116 F.Supp.2d 379 (E.D.N.Y. 2000)................................6

Garcetti v. Ceballos, 126 S.Ct. 1951 (2006)....................................5, 10, 11, 12, 13

Guglielmo v. Kopald, 2007 WL 1834740 (S.D.N.Y.)......................................13

Iannillo v. County of Orange, 187 F.Supp.2d 170 (S.D.N.Y. 2002)........................10

Jackson v. Jimino, 2007 WL 189311 (N.D.N.Y.).......................................10, 11

Kempkes v. Downey, 2008 WL 852765 (S.D.N.Y.)........................................9

Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,
        507 U.S. 163 (1993)..........................................................................10

Lewis v. Cowen, 165 F.3d 154 (2nd Cir. 2006)..............................................13

Luna v. Pico, 356 F.3d 481 (2nd Cir. 2004)..................................................15

McMahon v. New York City Board of Education, 2006 WL 3680624 (E.D.N.Y.)........10

Monell v. Dept. of Social Services, 436 U.S. 658 (1978)..................................7

Morey v. Somers Central School District, 2207 WL 867203 (S.D.N.Y.)...................11

Morris v. Lindau, 196 F.3d 102 (2nd Cir. 1999)...................................................13

Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123 (2nd Cir. 2001)............6

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986)...........................................7

Piesco v. New York City Department of Personnel, 933 F.2d 1149
    (2d Cir. 1991), cert. denied 112 S.Ct. 331(1991)...........................................15

Reuland v. Hynes, 2006 WL 2391163 (2nd Cir. 2006)......................................13

Rucci v. Thoubboron, 65 F.Supp.2d 311 (S.D.N.Y. 1999)..........................8, 10

Schlesinger v. New York City Transit Authority, 2001 WL 62868 (S.D.N.Y. 2001).......6

Shelton Police Union, Inc. v. Voccola, 125 F.Supp2d 604 (D.Conn 2001)................13

Sheppard v. Beerman, 18 F.3d 147 (2nd Cir. 1994), cert. denied, 115 S.Ct. 73 (1994)......6

Skehan v. Village of Mamaroneck, 2006 WL 2734218 (2nd Cir. 2006)............14, 15, 16

Sorlucco v. New York City Police Dep't., 971 F.2d 864 (2nd Cir. 1992)....................7

Spencer v The City of New York, 2007 WL 1573871 (S.D.N.Y.)...........................13

was the impetus for his dismissal. Finally, Defendants Degnan and Banks contend that they are entitled to qualified immunity.

## THE LEGAL STANDARD TO BE APPLIED ON A MOTION TO DISMISS

The standards governing determination of a motion to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure are clearly established. Sheppard v. Beerman, 18 F.3d 147, 150 (2nd Cir. 1994), *cert. denied*, 115 S.Ct. 73 (1994), *citing* Ad-Hoc Comm. of Baruch Black and Hispanic Alumni Ass'n v. Bernard M. Baruch College, 835 F.2d 980, 982 (2nd Cir. 1987).

In determining such a motion, the Court "must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2nd Cir. 2001), *citing* Irish Lesbian & Gay Org., 143 F.3d at 644; Freedman v. Freedman, 116 F.Supp.2d 379, 380 (E.D.N.Y. 2000). The Court cannot dismiss the Complaint unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitled him to relief." Sheppard, 18. F.3d at 150 (citations omitted).

"[T]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading alone that a recovery is very remote and unlikely, but that is not the test." Schlesinger v. New York City Transit Authority, 2001 WL 62868, *1 (S.D.N.Y. 2001), *citing* Chance v. Armstrong, 143 F.3d 698, 701 (2nd Cir. 1998) "(quotation marks omitted); *see also* Cooper v. Parsky, 140 F.3d 433, 440 (2nd Cir. 1998) ('The task of the court in ruling on a Rule 12(b)(6) motion is merely to assess the legal feasibility of the

complaint, not to assay the weight of the evidence which might be offered in support

thereof.') (quotation marks omitted)."

Against these standards, Defendants' motion must be denied.


## POINT I

### THE COMPLAINT SUFFICIENTLY PLEADS A CLAIM AGAINST THE VILLAGE

The Village argues first that Plaintiff's case against it should be dismissed

because, pursuant to Monell v. Dept. of Social Services, 436 U.S. 658 (1978), the

Complaint fails to allege that Plaintiff was fired as a result of the existence of an official

policy or custom which was applied to him in a manner which violated his First

Amendment rights.

This argument should be rejected.

While it is true that Section 1983 liability may be imposed upon a municipality if

the plaintiff can demonstrate that he suffered constitutional harms because of a

"municipal policy or custom" Monell v. New York City Department of Social Services,

436 U.S. 658, at 690-91 (1978), it is also true that a municipal policy or custom "need not

be contained in an explicitly adopted rule or regulation," Sorlucco v. New York City

Police Dep't, 971 F.2d 864, 870 (2d Cir.1992) or have "received formal approval through

the body's official decision making channels." Monell, supra at 691.

And, importantly here, "it is plain that municipal liability may be imposed for a

single decision by municipal policymakers under appropriate circumstances," whether

"that action is to be taken only once or to be taken repeatedly." Pembaur v. City of

Cincinnati, 475 U.S. 469, 480, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986).  Indeed, "a

single act of a municipal officer is sufficient to establish municipal liability if that

individual officer is possessed of "final policy-making authority with respect to the area

in which the action is taken."  Rucci v. Thouberron, 68 F.Supp2d 311 (SDNY 1999),

*citing*  McMilian v. Monroe Cty., 520 U.S. 781, 785, 117 S.Ct. 1734, 138 L.Ed.2d 1

(1997).

  Alternatively, "a municipality also can be liable for an isolated constitutional

violation if the final policymaker 'ratified' a subordinate's actions." Christie v. Iopa, 76

F.3d 1231, 1238 (9th Cir.1999) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 127,

108 S.Ct. 915, 99 L.Ed.2d 107 (1988).  Whether such ratification occurred is generally a

question of fact. Field Day, LLC v. County of Suffolk,  2005 WL 2445777794 (EDNY

2005) .

  With respect to the first instance in which he was terminated, Paragraph 8 of the

Complaint alleges that Police Chief Mancone advised Plaintiff in writing as follows:

> "By authority of the Village Board of Trustees of the Village
> of Brewster. . .under color of my authority as Chief of Police
> .your position as probationary police officer is hereby
> terminated, effective immediately."

Complaint, para. 8.

  With respect to the second instance in which Plaintiff was terminated, Paragraph

13 of the Complaint alleges that Chief Mancone advised him in writing :

> "The Village of Brewster Police Department is exceeding current
> budgetary constraints and forcing us to take action to prevent
> overruns from occurring. . . .        It is therefore necessary to terminate
> your employment immediately, effective July 12, 2007."

It is clear in this case that the Village Board, itself, and/or in conjunction with Police Chief Mancone determined to terminate Plaintiff on two separate occasions. Whether or not its status is actually alleged in the Complaint, it is clear that the Village Board was a policy-maker with respect to the decisions to terminate Plaintiff on two separate occasions.

Section 8-800 of the New York Village Law, states in relevant part:

> The board of trustees of a village may, by resolution, establish a police department in such village and appoint a chief of police and such personnel as may be needed, and fix their compensation.

Surely, if the Board of Trustees is a policy-maker with respect to the appointment of police personnel, it is a policy-maker with respect to the termination of police personnel. Certainly such status is implied in the communications the Police Chief sent on two occasions to Plaintiff advising him of his termination.

Moreover, to the extent that the Village would attempt to argue that the decision to terminate Plaintiff on two separate occasion was made by the Chief of Police and not by the Board, while the word "ratify," is not contained in the Complaint, reading the Complaint liberally and in a manner most favorable to the Plaintiff, at the very least, the Board's ratification of the illegal acts of the police chief is exactly what these paragraphs allege.

To the extent that the Village may attempt to argue that the determination to terminate Plaintiff was made by the Police Chief, and to the extent his status as a policy-maker is unclear at this stage of the proceedings, this Court should deny the Village's motion at this time pending completion of discovery and the making of a full record on this issue.  See, Judge Karras's decision in <u>Kempkes v. Downey</u>, 2008 WL 852765

(S.D.N.Y.); see also, <u>Iannillo v. County of Orange,</u> 187 F.Supp 2d 170 (S.D.N.Y., 2002);

<u>Rucci v. Thoubboron,</u> 68 F.Supp.2d 311, S.D.N.Y., 1999); <u>Jackson v. Jimino,</u> 2007 WL

189311 (N.D.N.Y.); <u>McMahon v. New York City Board of Education,</u> 2006 WL

3680624 (E.D.N.Y.).

Indeed, as Judge Swain noted in <u>Cooper v. Metropolitan Transportation</u>

<u>Authority,</u> 2006 WL 1975936 (S.D.N.Y.) " a claim of municipal liability under Section

1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing

more than a bare allegation that the individual officer's conduct conformed to official

policy, custom or practice," and under the rule enunciated in <u>Leatherman v. Tarrant</u>

<u>County Narcotics Intelligence & Coordination Unit,</u> 507 U.S. 163 (1993), **bare**

**allegations that the persons involved were policymakers and were empowered to**

**make decisions on behalf of the employer are sufficient to withstand a Rule 12(b)(6)**

**motion.**

Finally, to the extent that the Complaint does not specifically allege that the Board

of Trustees and/or the Police Chief were policymakers and to the extent that this Court

deems it necessary to amend the complaint to set forth such allegations, leave to replead

is respectfully requested and should be freely granted. See, Rule 15(a) of the Federal

Rules of Civil Procedure; see also <u>Carbajal v . County of Nassau,</u> 271 F.Supp2d 415

(E.D.N.Y. 2003).

## POINT II

### PLAINTIFF'S FIRST AMENDMENT CLAIM IS NOT BARRED BY <u>GARCETTI V. CEBALLOS</u>

The moving Defendants next take the position that as a result of the holding of the

United States Supreme Court in <u>Garcetti v. Ceballos,</u> 547 U.S. 410 (2006) Plaintiff's

statements as alleged in the Complaint, which resulted in his termination, are not entitled to First Amendment protection because they were made "during the course of his official duties and relating to the government employer." (Defendants' Memorandum of Law, p. 6). In advancing this argument, Defendants misread Garcetti.

    The law is clear, even in the wake of Garcetti, that the fact that a plaintiff expressed concerns in the course of his employment duties does not preclude the conclusion that they are matters of public concern protected by the First Amendment. Jackson v. Jimino, 2007 WL 1160409 (N.D.N.Y.), *citing* McLaughlin v. Pezzolla, 2007 WL 676674 (N.D.N.Y. 2007), Morey v. Somers Central School District, 2007 WL 867203 (S.D.N.Y.). In fact as Judge Conner noted in Morey, the Supreme Court in Garcetti wrote that "[t]he First Amendment protects some expressions related to the speaker's job." Morey, supra., citing Garcetti, supra 126 S.Ct 1951, 1959 (2006). "The fact that some of the official's speech may have been job-related does not mean, a foritiori, that the official's claim is barred under Garcetti. Jackson v. Jimino, *supra.*

    In this instance, the Complaint alleges that the following statements by Plaintiff are protected by the First Amendment:

> a. As a matter of law Mancone was not lawfully appointed Chief of Police because he had never held a full-time police officer job position, he had never taken a competitive civil service examination for the position of Chief of Police, and he had not been appointed as Chief of Police from a certified civil service eligible list;
>
> b. By reason of his lack of a professional police background, from time to time Mancone issued patently unlawful orders to subordinate officers who in turn refused to obey them by reason of their illegality;
>
> c. Mancone purposefully circumvented the twenty hour weekly limit that part-time Police Officers were permitted to work under New York State law by ordering subordinate officers to falsify time records as a result of which: i) officers on unpaid vacation leave were falsely recorded as having reported to

work when they did not; ii) officers directed by Mancone to "cover" for the vacationing officers were ordered to work a standard twenty hour work week as well as an unrecorded additional twenty hours; iii) which unrecorded hours were used to pay the vacationing officers who were unlawfully receiving their regular paychecks despite their absence on unpaid vacation leave,

d. Police Officer Wayne Peiffer (who works for a private sector supplier that provides equipment and materiel to Mancone in connection with his privately run HVAC business) had attended but within a few days dropped out of the New York State Police Academy as a result of which he was unqualified and untrained to properly perform law enforcement functions - - but was given a gun, badge and identification card by Mancone and permitted to act as a trained Police Officer in public thereby putting the public health and safety at risk, and

e. The Police Department, under the leadership of Mancone, Degnan and *inter alia* Banks had no departmental rules and/or policies a circumstance that both impaired departmental operations and the effective delivery of law enforcement and health related services to the community.

Complaint, para. 6.

None of the foregoing speech asserted as a basis for Plaintiff's claims is personal in nature. On the contrary, as in Morey, supra., where a custodian spoke out about asbestos in the schools and the Court held that these were matters of public concern protected by the First Amendment, all of the statements which form the basis for Plaintiff's claim in this case relate to the public fisc, to lack of appropriate qualifications and training of certain members of the Police Department, including the chief, to public safety, and to the impairment of the delivery of effective of law enforcement services to the public.

As one Court in this Circuit has recently found in determining on summary judgment that Garcetti did not preclude a Police Sergeant's First Amendment claims, "[T]he proper focus is to determine whether [Plaintiff] had a duty to report on all kinds of

issues pursuant to his official job duties." Drollet v. DeMarco, 2007 WL 1851102

(D.Conn.)[2]

In this case, Defendants do not even argue that Plaintiff was required pursuant

to his official duties to express these concerns to Mayor Degnan and Trustee Banks.

Indeed they present absolutely no evidence that Pisano's official duties included bringing

to the attention of the Mayor and a Trustee concerns regarding appropriate training and

qualifications, the public fisc and public safety.[3] See also, Brescia v. Sia, 2006 WL

2734231 (S.D.N.Y.).

In any event, at this early stage of the proceedings when there has been no

discovery, courts have properly concluded that "Garcetti issues concerning the First

Amendment claim can best be resolved on a complete trial record. " Guglielmo v.

Kopald, 2007 WL 1834740 (S.D.N.Y.); Spencer v. The City of New York, 2007 WL

1573871 (S.D.N.Y.); Carusso v. Massapequa Union Free School District, 478 F.Supp2d

377 (E.D.N.Y. 2007).

For the reasons set forth above, Defendants' Motion to Dismiss on Garcetti

grounds must be denied.

---

[2] The Defendants disingenuously argue that Plaintiff in this action is attempting to impute liability to Defendants Degnan and Banks simply because they, along with Chief Mancone, fired him because he was insubordinate in failing to follow departmental policy of adhering to the chain of command. (Defendants' Memorandum of Law, p. 6). Of course, that argument merely summarizes one of the versions of the facts advanced by the Defendants as a reason for terminating Plaintiff. However, as Judge Hall wrote in Drollet v. Demarco, supra., "the contours of Garcetti, which the Supreme court has not yet defined, would be stretched too far by accepting the argument that the mere existence of such a duty (i.e. following the chain of command) means any discipline for violating it is insulated from First amendment protection."

[3] Assuming that Garcetti does not bar Plaintiff from proceeding on his First Amendment claim at this time, Defendants do not dispute on this motion that Pisano's speech, as alleged in the Complaint, involved matters of public concern. Nor can they. As a general rule, speech on any matter of political, social, or other concern to the community is protected by the First Amendment. Reuland v. Hynes, 460 F.3d 409 (2d Cir., 2006); see Morris v. Lindau, 196 F.3d 102 (2d Cir., 1999) and Lewis v. Cowen 165 F.3d 154 (2d Cir., 1999), and Shelton Police Union, Inc. v. Voccola, 125 F.Supp2d 604, 627-628 (D.Conn. 2001) (speech on police staffing and budgetary matters, inadequate training, general operation and management of the police department are all matters of public concern.). Nor have Defendants argued that pursuant to the Pickering balance, Pisano's speech was reasonable likely to disrupt the functioning of the police department.

It is worthy of note in passing that Defendants advance the ludicrous argument that the Complaint fails to sufficiently plead that Plaintiff was fired for the words he spoke. In fact, reading of the Complaint in the light most favorable to Plaintiff compels just the opposite conclusion.

For example, Paragraph 6(a)-(e) sets forth the various statements Plaintiff claims to have made to Defendants Degnan and Banks, Paragraph 7 alleges that Banks and Degnan disclosed the statements to Chief Mancone and that the three of them agreed to punitively terminate Plaintiff. Paragraph 8 of the Complaint alleges that in furtherance of the plan set forth in Paragraph 7, Mancone issued a letter of termination stating that "By authority of the Village Board of Trustees of the Village of Brewster. . under color of my authority as Chief of Police . . .your position as probationary officer is hereby terminated, effective immediately."

With respect to the second termination, the Complaint alleges at Paragraph 13, that Plaintiff was again sent a letter of termination for the reasons set forth in Paragraph 7. Paragraph 15 alleges that as a proximate result of Defendants' retaliatory conduct Plaintiff has been caused to suffer various forms of damage and prospective chilling of his exercise of his First Amendment rights.

Reading the Complaint in the light most favorable to Plaintiff demonstrates that it more than adequately pleads that Plaintiff's speech on matters of public concern were a motivating factor in his termination. See Skehan et al v. Village of Mamaroneck et al, 465 F.3d 96 (2d Cir., 2006) and cases cited therein.

The Court should therefore deny Defendants' motion on this ground as well.

14

## POINT III

## NEITHER DEGNAN NOR BANKS IS
## ENTITLED TO QUALIFIED IMMUNITY

Qualified immunity shields government officials from liability for civil damages when the performance of their discretionary functions "'did not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Piesco v. City of New York Department of Personnel, 933 F.2d 1149, 1160 (2nd Cir. 1991), cert. denied, 502 U.S. 921 (1991), citing Harlow v. Fitzgerald, 102 S.Ct. 2727, 2738 (1982); Luna v. Pico, 356 F.3d 481, 490 (2nd Cir. 2004). "An official does not have immunity, however, where the contours of the right were sufficiently clear that a reasonable person would understand that what he is doing violates that right." Id.

As applicable to the case at bar, at the time Plaintiff was terminated in 2007, the law was well-settled that "governmental entities may not inflict an adverse employment decision upon an employee in retaliation for the exercise of his First Amendment rights." See Skehan et al v. Village of Mamaroneck et al, 465 F.3d 96 (2d Cir., 2006), citing , inter alia Munafo v. Metro. North Trans. Auth. 285 F.3d 210 (2d Cir., 2002).See also Drollet v. DeMarco, 2007 WL 1851102 (D.Conn.), noting that "the prohibition against suspending or terminating employees for the content of their speech has been clearly established since 1968," citing, inter alia Johnson v. Ganim, 342 F.3d 105 (2d Cir., 2003).

Contrary to Defendants' contention at p. 10 of their Memorandum of Law, the threshold question in this case is not whether it was objectively reasonable for the Village

of Brewster to fire Plaintiff for insubordination.[4] That argument merely represents the

Defendants' version of the facts (or one of the Defendants' versions of the facts). **The**

**threshold question on this motion is whether the Plaintiff's version of the facts, i.e.**

**that his speech on matters of public concern was a substantial or motivating factor**

**in the decision to terminate him, establishes that the Defendants violated a**

**constitutional right.** Drollet, *supra.*, *citing* Demoret v. Zegarelli 451 F. 3d 140 (2d Cir.,

2006). See also, Skehan, *supra.*

Based on well-established case law, Plaintiff's version of the facts clearly

establishes such a violation. And in such an instance, "governmental officials are entitled

to qualified immunity only if they can show that viewing the evidence in the light most

favorable to plaintiff, no reasonable jury could conclude that defendants acted

unreasonably in light of clearly established law." Demoret v. Zegarelli, *supra.*

Such a showing cannot be made here.

If indeed Defendants ultimately convince a jury that their motivations for

terminating Plaintiff were unrelated to his expressions on matters of public concern, they

will prevail at trial, not because they are qualifiedly immune, but because they did not

engage in violations of well-established law.

Accordingly, this Court should decline to grant Defendants Degnan and Banks

qualified immunity.

---

[4] Of course that was the reason given for the first termination. The second time around, the claim was that Plaintiff was terminated due to budgetary constraints.

## CONCLUSION

### THE MOTION TO DISMISS OF DEFENDANTS VILLAGE, DEGNAN AND BANKS SHOULD IN ALL RESPECTS BE DENIED

Dated: White Plains, New York
        May 15, 2008

LOVETT & GOULD, LLP
Attorneys for Plaintiff

By _____ (JBG4510)
Jane Bilus Gould (JBG 4510)
222 Bloomingdale Road
White Plains, New York  10605
914-428-8401

17